IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN LEE BEAM,                          :
                    Petitioner,          :        1:16-cv-0690
                                         :
          v.                             :        Hon. John E. Jones III
                                         :
MICHAEL CLARK, *et al.*,                 :
                    Respondents.         :

## MEMORANDUM

### July 30, 2018

Petitioner Kevin Lee Beam ("Petitioner" or "Beam"), a state inmate currently confined at the State Correctional Institution at Albion, Pennsylvania, filed his Petition (Doc. 1) for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and Memorandum (Doc. 2) in support of the petition on April 26, 2016. He seeks relief from the Judgment of Sentence of twenty years and nine months to fifty-nine years' incarceration imposed in Court of Common Pleas of Franklin County, Pennsylvania, criminal case CP-28-CR-0000499-200, following convictions for rape, criminal attempt to commit involuntary deviate sexual intercourse, aggravated indecent assault, and endangering the welfare of a child. (Doc. 1, p. 1).

By Memorandum and Order dated May 9, 2018, the Court denied the petition with respect to all claims except the claim that Attorney Toms' "failure to properly and adequately inform [him], a person with a low IQ and severely hindered by his mental capacity, of the significant risks of withdrawing the guilty

plea and going to trial amounted to ineffective assistance of counsel at a critical stage in the proceedings..." (Doc. 17; Doc. 2, p. 32). As noted in the Court's prior Memorandum, because the state court failed to address the issue, despite the fact that Beam fairly presented it during all phases of the collateral proceedings (Doc. 15-1, pp. 96, 97; Doc. 15-2, pp. 9, 18, 19, 45-48, 62-107; Doc. 15-3, pp. 39-42; Doc. 15-4, pp. 4-14; Doc. 15-5, pp. 19-21), *de novo* review is required. (Doc. 17, pp. 40, 41). The Court ordered Respondents to file a supplemental brief addressing the issue. (*Id.* at 42). Respondents filed a timely Supplemental Response. (Doc. 20). The Court also directed Respondents to expand the record by providing all documents related to the entry and withdrawal of the guilty plea, including transcripts of the October 25, 2010 plea colloquy and the December 8, 2010 hearing on the withdrawal of the plea. (Doc. 17, p. 42). According to Respondents, the transcripts are no longer available; they were destroyed in accordance with the Administrative Office of Pennsylvania Courts Record Retention and Disposition Schedule. (Doc. 20-1, p. 3, ¶¶ 3-7). Although the transcripts would have provided additional insight into the state court proceedings, they are not integral to the disposition of Beam's claim. The issue is now ripe for disposition. *De novo* review has been undertaken and, for the reasons set forth below, relief will be denied.

## I. *DE NOVO* STANDARD OF REVIEW

Where the state court does not adjudicate a fairly presented claim on the merits, deferential AEDPA standards of review under 28 U.S.C. § 2254(d) do not apply, and "the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact." *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001); *see also Bronshtein v. Horn*, 404 F.3d 700, 709 n. 4 (3d Cir. 2005). Additionally, regardless of whether a state court reaches the merits of a claim, a "federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Fahy v. Horn*, 516 F.3d 169, 181 (3d Cir. 2008).

## II. RELEVANT STATE COURT BACKGROUND

On March 18, 2009, Beam was charged with six counts of rape, sexual assault, criminal attempt to commit involuntary deviate sexual intercourse, three counts of aggravated indecent assault, two counts of indecent assault, endangering the welfare of a child and three counts of statutory sexual assault. (Doc. 15-2, p. 66). On June 16, 2009, Beam sought a psychiatric evaluation to determine competency. (*Id.*) The trial court granted his motion and appointed mental health counsel. (*Id.*) On December 7, 2009, following review of the psychiatric report, the trial court deemed Beam incompetent and ordered him committed to Torrance

State Hospital for evaluation pursuant to the Mental Health Procedures Act, 50 P.S. §§ 7402-03, with a directive to resume criminal proceedings when competence was restored. (*Id.*) On February 4, 2010, the trial court extended Beam's commitment for an additional ~~sixty~~ thirty days based on the opinion of Dr. Daleep Rathore ("Dr. Rathore"), who opined that further treatment was necessary. (*Id.*) "Dr. Rathore noted that Beam's diagnosis at that time was depression, not otherwise specified, and history of alcohol abuse." (*Id.*).

On March 30, 2010, the Torrance State Hospital Regional Forensic Psychiatric Center issued a "Forensic Summary," authored by Dr. Rathore, indicating, *inter alia*, that Dr. Adamsky completed a psychological assessment on February 4, 2010, and that Beam's competency had been restored. (Doc. 20-1, pp. 7-13). The relevant portions of the summary are as follows:

> IDENTIFYING INFORMATION:
> Mr. Kevin Beam is a 37-year-old, date of birth January 9, 1973, single, unemployed, 12th grade education, supported from Social Security Disability income, who was incarcerated at Franklin County Jail since March 18, 2009… He was transferred to Torrance State Hospital Regional Forensic Psychiatric Center on January 27, 2010 on a 402 commitment for competency evaluation.

> PSYCHOLOGICAL HISTORY
> Mr. Beam indicated that he appropriately achieved all of his developmental milestones.
> ***
> Mr. Beam reported that he was frequently in trouble as a child and adolescent. He acknowledged a history of lying, stealing, and

fighting. He stated that these behaviors in addition to truancy generalized to the academic setting leading to several school suspensions. Mr. Beam described himself as an "A, B, and C" student and indicated he was enrolled in learning support classes for an unknown reason. However, he stated that he graduated from high school with "two diplomas" for welding and academics.

\*\*\*

Mr. Beam stated that his history of mental health treatment began during adolescence. He reported that during this time period, he received inpatient treatment "a few times" at Chambersburg Hospital and one other time at a hospital which he could not remember.

\*\*\*

He was given MMPI-2, WASI, mini mental health status examination, and Test of Memory Malingering (TOMM). The MMPI is an objective inventory of personality construct and psychopathology. Mr. Beam's scores on this assessment measure were found to be invalid. His pattern of responding indicates a significantly high degree of response and unusualness even among clinical population. This suggest that Mr. Beam was over reporting and seriously exaggerating symptomology. His response style indicates an attempt to portray himself in a very negative manner possibly for secondary gain. The WASI is an assessment instrument for evaluating one's intellectual functioning by measuring verbal, nonverbal, and general cognitive abilities. His full-scale IQ was 71, verbal IQ was 75, and performance IQ was 72. The mini mental status examination score was 28 out of a possible 30 which falls within the normal range for orientation and neurological functioning. The TOMM is a 50 item recognition test designed to help clinicians discriminate between malingering and genuine memory deficits. This test includes two learning trials and retention trial. Mr. Beam's responses indicate the possibility of malingering. His scores on trails [sic] 1 and 2 and retention were 5, 0, and 1 respectively. Mr. Beam's responses on trial 1 and 2 as well as the retention trial were significantly lower than individuals suffering from dementia, traumatic brain injuries, aphasia, and cognitive impairment. Furthermore, his significantly low scores also raise serious questions about the validity of his scores on the other tests suggesting an underlying motivation not to perform well.

Mr. Beam's performance on testing demonstrated that his cognitive abilities fall within the borderline range of intelligence.

PSYCHIATRIC CONDITION ON DISCHARGE:
Mr. Beam was casually dressed, clean in appearance, and able to maintain good eye contact. He was oriented to person, place and time. He was cooperative and showed no psychomotor agitation or retardation. His speech was spontaneous, coherent, and goal directed. His depression improved. He was not irritable and reported no suicidal or homicidal thoughts. He reported no auditory or visual hallucinations. He was not showing any delusional thought process or paranoia. His insight and judgment improved.

RECOMMENDATIONS
In my clinical opinion, he is aware of pending charges against him. He is aware of the role of judge, public defender, and district attorney's office. He is aware of plea bargain and jury trial. He is aware these charges are severe and there are severe consequences from these charges. Again, in my clinical opinion he is competent to assist his attorney in his legal defense. He will be transferred to Franklin County Jail according to forensic security arrangements. If he decompensates, then he will need a 304 commitment to stabilize his depression.

(Doc. 20-1, pp. 7-13). In early April 2010, Beam returned to Franklin County to answer to the criminal charges. (Doc. 15-2, p. 66).

On or about October 15, 2010, Beam sent a letter to Franklin County Assistant District Attorney Lauren E. Sulcove stating as follows:

I have compiled this letter respectfully in request of a timely responce [sic]. I am interested in coming to an agreement between the D.A. and I and ending this case in a timely and just fashion.

I would like to plea [sic] guilty to a misdemeaner [sic] county sentence of 11-to-23 months with no Meagans [sic] law or child abuse

classes involved.  A coruption [sic] of minor charge is in mind.  Keep in mind I have benefits to offer the D.A. as well.

Please come to the Franklin County Jail to discuss this at your earliest convenance [sic].  Thank you for your time and consideration in this matter.

Respectfully,

Kevin Beam

(Doc. 20-1, p. 15). On October 25, 2010, he entered into a plea agreement, as depicted in the following excerpt from the trial court's Procedural History portion of the Pa.R.A.P. 1925(a) Opinion:

> He agreed to plead guilty to aggravated indecent assault and statutory sexual assault.  In exchange, the Commonwealth agreed to dismiss the remaining charges and to consecutive sentences of 8–16 years for aggravated indecent assault and 1–2 years for statutory sexual assault.  Beam equivocated somewhat on his written plea colloquy, specifically with regard to his satisfaction with his counsel's representation and with the voluntariness of the plea.  Ultimately, however, Beam agreed to the plea, and this Judge accepted it.  The Court also ordered an evaluation of Beam by the Sexual Offenders Assessment Board as required by Megan's Law II.

(Doc. 15-1, pp. 19, 20).  The guilty plea documents executed during the October 25, 2010 proceeding include the court order accepting the plea (Doc. 20-1, p. 17), a list of the nine charged offenses and accompanying mandatory minimum penalties and maximum penalties (*Id.* at 18), the Plea Agreement (*Id.* at 19), the written guilty plea colloquy (*Id.* at 19-22), and Attorney Toms' statement, approved by

Assistant District Attorney Lauren E. Sulcove, that he "advised his client of the contents and meaning of this document; that it is my belief that he/she comprehends and understands what is set forth above and that the defendants understands what he/she is doing by pleading guilty." (*Id.* at 23). With the exception of the court order, each page contains Beam's initials and the final page of the written plea colloquy contains his signature. (*Id.* at 19-22).

Within days, Beam sent to "Hon. Judges: Herman" at the Franklin County Courthouse, a letter communicating his desire to withdraw the plea of guilty. In the PA.R.A.P. 1925(a) Opinion the trial court described the sequence of events surrounding the withdrawal of the plea as follows:

> Five days later, Beam sent a letter to the Clerk claiming that Attorney Toms had provided ineffective assistance of counsel and claimed that he "was forced to take another plea." [In his October 30, 2010 letter, Beam specifically stated that "[o]n October 25, 2010, I was called to court with no prier [sic] notice, and my counsel Michael J. Toms made me believe that I had to make, and decizen [sic] write away on the spot, to take a plea 9 to 18 years, or for me to plan to do life in prison, with know [sic] prior litigation in my defense." (Doc. 20-1, p. 26).] Concerned, the Court ordered Beam brought before us for a hearing on December 8 2010 to ascertain whether Beam's plea was involuntary. After the hearing, the Court allowed the Commonwealth time to respond to Beam's oral motion to withdraw his plea. The Commonwealth indicated that it was ready to take the case to trial; therefore, on January 18, 2011, the Court directed withdrawal of Beam's plea and set the matter for trial. The Court further vacated the Public Defender's appointment and appointed new counsel.

(Doc. 15-1, p. 20; Doc. 20-1, pp. 25, 28, 30-32, 34, 36). Beam opted to proceed to trial.

On April 25, 2011, the Franklin County Clerk received from Beam a letter to his attorney, James Reed, Esq., which the Clerk forwarded to Attorney Reed. Beam expresses that he faces an uncertain and unfair trial and sets forth what he believes to be problematic issues at trial. (Doc. 20-1, pp. 38-42). He asks Attorney Reed to take the following steps:

> #1) File a motion to dismiss all charges See attached motion, and as well as incorperate [sic] your personal knowledge to support this issue with this motion. (Then mail me a copy and set a court-date for this motion to be fully heard).
>
> #2) Mention within this motion to dismiss charges, that mishandling of requested DNA testing and violations of due process laws and constitutional laws.
>
> #3) Set an evidential [sic] and suppression hearing to ensure no evidence(s) can be used against me which the commonwealth has not given me, as well as statements I've supposidly [sic] made while under duress and influence of drugs which I was on at the time. (argue inadmissibility).
>
> These issues require your expertise, of course, and would be looked at as favorable by me as well as my family.
>
> Thank you for your time and I appreciate anything you can offer to assist my fight for justice.
>
> April 20, 2011          Respectfully
>
> Kevin Beam

1804 Opportunity Ave.
Chambersburg, PA, 17201

(*Id.*) He sets forth the following in his "attached motion":

#1)    The accused individual, having been arrested, while at a preliminary hearing for the above numbered cases made an oral request for the county of Franklin to order that DNA testing be done to determine the the [sic] alleged victims [sic] statement be confirmed as true beyond doubt.

A) The testing was not done.

B) This testing could not have carried weight(s) and sufficiency would have  proved this petitioners [sic] innocence.

C)  This testing would have insured no miscarriage of justice upon the accused petitioner.

D) The testing was requested by this petitioner also at arraignment to his counselor "Michael Toms", when he, "petitioner", was informed that the alleged victim had an abortion.

E) This testing's sole purpose(s) were rendered useless as of this     point and the accused petitioner could not and can no longer prove his innocence because of Mr. Tom's neglect and the commonwealth neglects as well to allow a fair and equal protections under due process laws.  "Here, this petitioner has spoken to Laura Sulcove and Michael Toms", personally and both have failed him in acquiring justice".

#2) In the neglect of both Public Defender, Michael Toms, and the District Attorney Offices by Lauren Solcove this accused petitioner finds himself unable to stop the wheels of this neglects which bring unrepairable damage to his being able to defend himself in the courts. Finding himself now at a disadvantage "only through these neglects

this accused petitioner seeks to have these charges dismissed completely and the commonwealth barred from recharging him.

#3) As a key factor of trial strategy the District Attorneys [sic] Offices will surely instruct the jury it may convict on the alleged victims [sic] testimony alone which unbalances the outcome before starting a trial. All of this depends solely on the statement of the alleged victim telling the truth. "SINCE THE DNA TESTING WAS REFUSED AND THE ALLEGED VICTIMS [sic] STATEMENTS MAY NOT BE TRUTHFUL BUT VINDICTIVE". This petitioner now asserts he is not able to repair any damages caused by neglect from either party mentioned in #2).

#4) There is no way this accused petitioner can obtain justice to any degree and the commonwealth in it's [sic] wisdom should know the weights and sufficiency of any evidence's [sic] it uses will be constantly objected to and challenged by any attorney for this accused petitioner; or this petitioner will immediately release that attorney for failing him.

This petitioner, hoping for the decisions of this to be favorable submits this respectfully to this honorable court.

(Doc. 20-1, pp. 38-40). Attached to the document is a certificate of service indicating that Beam served the Clerk of Court, the Judge, the ADA, and his attorney. (*Id.* at 40).

On July 18, 2011, Beam's counsel filed a motion to dismiss alleging that the Commonwealth committed a *Brady v. Maryland*, 373 U.S. 83 (1963) violation by failing to preserve the DNA from the aborted fetus. (Doc. 15-2, p. 67). On July 28, 2011, the Commonwealth filed a motion *in limine* seeking to exclude evidence of Beam's IQ. (*Id.* at 68). On August 1, 2011, the first day of trial, the trial court

denied Beam's motion to dismiss, specifically finding that no due process violation occurred, and granted the Commonwealth's motion *in limine,* excluding any evidence referencing Beam's IQ of 71. (*Id.*) The matter then proceeded to trial and, on August 2, 2011, the jury found Beam guilty of rape, criminal attempt to commit involuntary deviate sexual intercourse (IDSI), aggravated indecent assault, indecent assault, and endangering the welfare of a child in violation of 18 PA. CONS. STAT. §§ 3121(a), 901(a) and 3123(a)(7), 3162(a)(8), and 4304, respectively. Following a presentence investigation, the court imposed a sentence of incarceration of twenty years and nine months to fifty-nine years.

## III.  DISCUSSION

A claim for ineffective assistance of counsel is governed by the following two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. 2052. Both the "performance" and "prejudice" elements must be satisfied to obtain relief. *See United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017); *Bey v. Superintendent Greene SCI*, 856 F.3d 230,

238 (3d Cir. 2017).  The test applies to representations made during the plea process as well as the trial process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Bivens v. Groose*, 28 F.3d 62, 63 (8th Cir. 1994).  Each element is defined as follows:

> For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." [*Strickland*, 466 U.S.] at 688, 104 S.Ct. 2052. This review is deferential:
>
> > A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
>
> *Id.* at 689, 104 S.Ct. 2052
>
> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

> In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.

*Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010).

We first address the deficient performance prong. Because it is dispositive of the issue, our discussion will be limited to that prong.

Beam argues that "[p]re-trial counsel's failure to properly and adequately inform [him], a person with a low IQ and severely hindered by his mental capacity, of the significant risks of withdrawing the guilty plea and going to trial amounted to ineffective assistance of counsel at a critical stage in the proceeding as Beam was ill-advised of the ramifications of doing so." (*Id.* at 32). He further argues "[h]ad pre-trial counsel properly and adequately informed [him] to take the plea deal offered by the Commonwealth, the 9 to 18 years, [he] would not have proceeded to trial and received 20 years –9 months to 59 years as [he] was unable to make the decision to do so considering his mental capacity and IQ level: to fully understand what sentence he was going to receive if he goes to trial." (*Id.*) Beam's argument that counsel was ineffective hinges on his contention that "[he] was unable to make the decision" concerning the plea deal offered by the Commonwealth due to his low IQ and because he was "severely hindered by his

mental capacity…" (Doc. 2, pp. 31, 32). Because this underlying claim lacks arguable merit, counsel cannot be found to have performed deficiently.

Although the question of the merit of an underlying claim is not an explicit step under *Strickland*, the United States Court of Appeals for the Third Circuit has held that requiring a showing that the underlying claim has merit is not in conflict with *Strickland*. *Rompilla v. Horn*, 355 F.3d 233, 248 n. 9 (3d Cir. 2004), reversed on other grounds, *Rompilla v. Beard*, 545 U.S. 374 (2005). Rather, it is considered a determinative factor in the "deficient performance" prong of the *Strickland* analysis. *See Werts v. Vaughn*, 228 F.3d 178, 203-05 (3d Cir. 2000); *Cf. Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise meritless claims).

The Forensic Summary Report from Torrance State Regional Forensic Psychiatric Center ("Forensic Summary Report") identified Beam's full scale IQ to be 71 following administration of the WASI test. (Doc. 20-1, pp. 10, 11). However, this score and other test scores were deemed unreliable. (*Id.*) Dr. Adamsky found the MMPI score to be invalid as his responses indicated a "significantly high degree of response and unusualness even among clinical population" which suggested that Beam "was over reporting and seriously exaggerating symptomology." (*Id.* at 10). The mini mental status examination

score was 28 out of a possible 30 which was within normal range for orientation and functioning. (*Id.* at 11). The TOMM results were "significantly lower than individuals suffering from dementia, traumatic brain injuries, aphasia, and cognitive impairment." (*Id.*). Dr. Adamsky explained that "his significantly low [TOMM] scores also raise serious questions about the validity of his scores on the other tests, [which demonstrated that his cognitive abilities fall within the borderline range of intelligence], suggesting an underlying motivation not to perform well." (*Id.*). There is no evidence in the report that Beam was "severely hindered by his mental capacity." (Doc. 2, p. 31). Rather, the Forensic Summary Report concluded that Beam was aware of the pending charges against him, aware of the roles of judge, public defender, and district attorney's office, and aware of the plea bargain and jury trial processes; he was deemed competent to assist his attorney in his legal defense. (Doc. 20-1, p. 13). Notably, the doctor indicated that if he "decompensated" he would need to be recommitted to stabilize his depression, indicating that his mental state, not his mental capacity, influenced Beam's competency. (*Id.*)

At no point after competency was restored did Beam "decompensate," or display incompetence or compromised mental capacity. In fact, his competency and capacity to understand the criminal proceedings is evidenced by his letters

written to the Assistant District Attorney, the trial court and his trial counsel. The contents of these letters, set forth verbatim, *supra*, display an acute understanding of sentencing (Doc. 20-1, p. 15), the plea bargain stage (*Id.* at 15, 26), evidentiary issues (*Id.* at 38-41), discovery issues (*Id.* at 25, 26), the value of motion practice (*Id.* at 25, 26, 38-41), constitutional law (*Id.* at 25, 26, 41), and the criminal proceedings as a whole.

The letters further demonstrate Beam's ability to capably and effectively advocate on his own behalf and make decisions concerning his case. "There is general agreement in the case law and the rules of professional responsibility that the authority to make decisions regarding the conduct of the defense in a criminal case is split between criminal defendants and their attorneys." *Gov't of V.I. v. Weatherwax*, 77 F.3d 1425, 1433 (3d Cir. 1996). "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, *see Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed. 1980)." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Conversely, non-fundamental decisions are to be made by counsel on the basis of his or her professional judgment exercised after consultation with the client. *Gov't of V.I. v.*

*Weatherwax*, 77 F.3d at 1433 (citing *Jones*, 463 U.S. 745 (recognizing accused has right to make certain fundamental decisions and identifying as non-fundamental decisions whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and witness selection)).

In advance of the entry of his guilty plea, despite the fact that he was represented by Attorney Toms at the time, Beam authored a letter to the Assistant District Attorney seeking a plea agreement whereby he would plead guilty to a misdemeanor county sentence of 11-23 months "with no Meagans [sic] Law or child abuse classes involved" and indicated that he had "benefits to offer the D.A." (Doc. 20-1, p. 15). This letter demonstrates a clear understanding of the plea process, the state court sentencing scheme, and punishments attendant with the charges he faced.

In his letter to the trial court, dated October 30, 2010, seeking to withdraw his guilty plea five days after it was entered, Beam clearly and unequivocally communicated to the trial court that he was dissatisfied with every facet of Attorney Toms' representation. (*Id.* at 25, 26). He cited nine claims of counsel's ineffectiveness including the failure to procure witnesses, to obtain evidence, to discover hospital records, to obtain his "discovery pack," and to protect his due process rights. He claimed counsel refused to file a motion to determine his prior

record score, and accused him of coercing him into entering a plea of guilty. (Doc. 20-1, p. 25, 26). With regard to the guilty plea, Beam's letter, included the statement that "[o]n October 25, 2010, [he] was called out to court with no prier [sic] notice, and my counsel Michael J. Toms made me believe that I had to make, and [sic] decizen [sic] write [sic] away on the spot, to take a plea 9 to 18 years, or for me to plan to do life in prison, with know [sic] prior litigation in my defense." (*Id.* at 25). The letter resulted in a hearing held on December 8, 2010, "to try to ascertain whether Defendant's plea was voluntary." (*Id.* at 28). Thereafter, the prosecution notified the trial court that it did not object to the withdrawal of the plea "as its case is not prejudiced by Defendant's Motion. The Commonwealth is fully prepared to proceed to trial by jury on all charges." (*Id.* at 30, 31). On January 18, 2011, the trial court issued an order granting withdrawal of the plea, terminating Attorney Toms as counsel, and appointing new trial counsel, James Reed, Esq. (*Id.* at 25, 26, 34, 36). Beam effectively advocated on his own behalf and achieved precisely what he sought to achieve.

In his April 20, 2011 letter to Attorney Reed, Beam directed counsel to file a motion to dismiss the charges on the ground that the Commonwealth failed to obtain the DNA of the victim's aborted fetus. (*Id.* at p. 41). He attached a motion and directed counsel to "incorporate [his] personal knowledge." (*Id.*) He

instructed counsel to "mention within this motion to dismiss charges, that mishandling or requested DNA testing and violation of due process laws and constitutional laws." (*Id.*) Lastly, he advised counsel to set an evidentiary and suppression hearing to "ensure no evidence(s) can be used against me which the commonwealth has not given me, as well as statements I've supposidly [sic] made while under duress and influence of drugs which I was on at the time. (argue inadmissibility)." (*Id.*). Per Beam's request, trial counsel, Annie Gomez, Esq., an associate employed by James Reed, Esq, filed a motion to dismiss which included the DNA testing issue set forth in Beam's letter.

These letters clearly display that Beam was competent throughout the proceedings, participated in and took charge of his defense, and made decisions concerning both fundamental and non-fundamental issues germane to his case. Glaringly absent from the letters is any expression of regret concerning his decision to withdraw his plea, any indication of a desire or attempt to reinstate the plea agreement, or any reservations about going to trial.

Additionally, Beam did not advance a mental infirmity defense in his state court proceedings. Days before trial, Assistant District Attorney Lauren E. Sulcove received an email from trial counsel indicating that she planned to introduce evidence at trial of Beam's IQ. (Doc. 20-1, p. 46). The Commonwealth

filed a motion *in limine* strongly objecting to the evidence as irrelevant "unless

Defendant is asserting a mental infirmity defense." (*Id.*) The Assistant District

Attorney pointed out that, pursuant to Rule 568 of the Pennsylvania Rules of

Criminal Procedure, such a "Notice of Defense of Insanity or Mental Infirmity"

must be filed within thirty days of arraignment and that 813 days had passed. (*Id.*)

It also requires the inclusion of specific information as to the nature and extent of

the infirmity, the period of time that the defendant allegedly suffered from it, and

the names and addresses of witnesses, expert or otherwise, whom the defendant

intends to call to establish such offense and Beam had provided none of this

information. (*Id.*) Defense counsel responded that "[t]he Defendant is not raising

a mental infirmity defense." (*Id.* at 50). "[T]he Defendant maintains his I.Q. is

relevant for the jury to understand the circumstances surrounding the writing of his

statement and the rudimentary nature of his statement." (*Id.*). The trial court

granted the motion and ordered that "during this trial there shall be no testimony,

no argument, no comment or otherwise any suggestion to the jury regarding any

claim that the defendant's IQ has been measured at 71." (Doc. 15-1, p. 61). In its

Pa.R.A.P. 1925(a) opinion, the trial court further expounded upon its ruling:

> The Court believes that we properly excluded reference to Beam's IQ.
> The evidence was irrelevant because Beam did not raise a mental
> infirmity defense. Nor did he challenge the voluntariness of his
> confession. Thus, the fact that Beam has an IQ of 71 had no tendency

to make any fact or consequence in the rape and sexual assault of M.D. more or less probable. Cf. Pa.R.E. 401. Furthermore, the validity of the IQ measurement is dubious, given that Torrance's examining physician diagnosed Beam with malingering, meaning that he may have intentionally attempted to manipulate psychological or intelligence tests in an effort to make himself appear more sympathetic.

(Doc. 15-1, p. 31).

To be thorough, we distinguish two cases Beam cites in support of his argument, *Boria v. Keane*, 83 F.3d 48 (2d Cir. 1996), which case was clarified and affirmed on rehearing, *Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996) and *United States v. Day*, 969 F.2d 39 (3d Cir. 1992). (Doc. 2, p. 31).

In *Boria*, the district attorney advised defense counsel that the government was willing to accept a plea of guilty which would result in a one to three-year sentence, but warned that rejection of the offer would result in a superseding indictment. *Boria*, 99 F.3d at 494-95. Defense counsel failed to present a plea offer to Boria or discuss with him, in any manner, the advisability of accepting or rejecting the plea offer. (*Id.* at 494). A superseding indictment was filed and, at trial, Boria was found guilty and sentenced to twenty years to life imprisonment. (*Id.* at 50). Counsel was deemed ineffective for failing to present the plea. Boria had served approximately six years of the sentence, three years more than he

would have served had he been presented with, and accepted, the plea offer.  As a remedy, Boria's sentence was reduced to time-served.

Beam's reliance on *Boria* is misplaced; the facts are inapposite.  The case is limited to counsel's failure to present a plea offer to his client and there is no mention of a low IQ or severely hindered mental capacity.  On rehearing, the Second Circuit clarified that "[t]he initial opinion in this case did not hold that it is constitutionally ineffective assistance of counsel when a lawyer's advice regarding the wisdom of accepting or rejecting a plea offer fails to convince the client. We held only that the absence of any advice constitutes ineffective assistance of counsel, and that under the circumstances of this case (where, the lawyer believed that rejecting the plea was suicidal, and there was a vast disparity between the sentence to be served upon rejection of the plea offer and subsequent conviction) the absence of the advice prejudiced the client." *Boria v. Keane*, 90 F.3d 36, 37 n2 (2d Cir. 1996).

Attorney Toms clearly advised Beam with regard to the plea offer as evidenced by his statement, affixed to the plea agreement:  "I, Michael J. Toms, Esquire, attorney for the above named defendant, state that I have advised my client of the contents and meaning of this document; that it is my belief that he/she comprehends and understands what is set forth above and that the defendant

understands what he/she is doing by pleading guilty."  (Doc. 20-1, p. 23).  Upon

accepting the offer, in addition to partaking in a plea colloquy hearing, Beam

initialed the page of the written plea colloquy that listed the nine charged offenses

and accompanying mandatory minimum penalties and maximum penalties.  (*Id.* at

18). Two of the charges carried mandatory minimum penalties of ten years and one

carried a mandatory minimum of five years.  (*Id.*)  The maximum penalties were

also listed. Three charges carried twenty year maximums, three carried ten year

maximums, one carried a seven-year maximum, and two carried two year

maximums.  (*Id.*)  Further, according to Beam's letter claiming that Attorney Toms

coerced him into entering the guilty plea, in presenting the plea offer to Beam

Attorney Toms advised him that if he failed to accept the offer, "he should plan to

do life in prison."

     Beam's reliance on *United States v. Day*, 969 F.2d 39 (3d Cir. 1992) is also

misplaced.  Low IQ or severely hindered mental capacity was not a factor in this

case either.  "On the day that his trial was to begin, Day alleges, Eugene Tinari

informed him that the government had offered a five-year sentence as part of a plea

bargain. Eugene Tinari, however, allegedly did not explain or discuss the merits of

the offer, as opposed to standing trial. According to Day, Eugene Tinari did not

discuss the (overwhelming) strength of the government's case, nor did Eugene

Tinari mention sentence exposure, even after Day indicated that he was inclined to stand trial because Nino Tinari had stated that the maximum sentence was only eleven years. Day claims that he would have accepted the government's plea bargain offer had he been advised that, if convicted, he would be classified as a career offender and subject to a sentence as long as the one he actually received." (*Id.* at 42). Day rejected the offer and proceeded to trial. He argued that, although he was notified of the terms of the plea bargain, the advice that he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer. (*Id.* at 43). In considering whether counsel's performance was deficient, the Day Court stated that "if Day is correct that he was seriously misled about his sentence exposure when the likelihood of his conviction was overwhelming, he received ineffective assistance of counsel." (*Id.* at 44).

Unlike Mr. Day, Beam was presented with the plea offer and, initially, chose to enter into a plea agreement. With that, he had a plea colloquy hearing and executed a written plea colloquy by affixing his signature to the end of the document. (Doc. 20-1, pp.18-22). As stated above, he also initialed the page of the colloquy that listed the nine charged offenses and accompanying mandatory minimum penalties and maximum penalties. (*Id.* at 18). Beam's April 2011 letter

to Attorney Reed also demonstrates that he was aware of the overwhelming evidence against him, specifically, the victim's statement and his own statements. (*Id.* at 41). In fact, he instructed counsel to move to suppress his statements months after he withdrew his plea. (*Id.* at 41).

There is no reliable evidence that Beam suffered from a low IQ, and no evidence that he was severely hindered by his mental capacity. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (finding a petitioner cannot meet his burden of establishing ineffectiveness with vague and conclusory allegations; evidentiary hearing not necessary) citing *Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987). *See also Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008) (finding evidentiary hearing unwarranted when a petitioner fails to set forth fact to support his contention). Consequently, Beam's claim, that counsel was ineffective in failing to properly and adequately advise him because he suffered from a low IQ and severely hindered mental capacity, is without merit.

## IV.  <u>CONCLUSION</u>

Based on the foregoing *de novo* review of Beam's claim that Attorney Toms' "failure to properly and adequately inform [him], a person with a low IQ and severely hindered by his mental capacity, of the significant risks of

withdrawing the guilty plea and going to trial amounted to ineffective assistance of counsel at a critical stage in the proceedings..." (Doc. 2, p. 31), the claim is denied.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Beam from

appealing the order denying his petition so long as he seeks, and obtains, a

certificate of appealability from the Third Circuit Court of Appeals.  *See* Fed. R.

App. P. 22(b)(1).

A separate Order will enter.